UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WILLIE JAMES BUSH, JR.,<br>    Plaintiff, | Case No. 1:13-cv-448 |
| vs | Beckwith, J.<br>Bowman, M.J. |
| DR. YOUSUF J. AHMAD, et al.,<br>    Defendants. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff, who resides in Cincinnati, Ohio, has filed a *pro se* complaint alleging a violation of his federal constitutional rights. (*See* Doc. 1, Complaint). By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if satisfied that the action is frivolous or malicious. *Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise

to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress has also authorized the *sua sponte* dismissal of complaints which fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915 (e)(2)(B)(ii). Although a plaintiff's *pro se* complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Plaintiff brings this action against Dr. Yousuf J. Ahmad, a member of Catholic Health Partners (CHP) and President and Chief Executive Officer (CEO) of Mercy Health, in Cincinnati, Ohio, as well as the United States Clerk of Court for the Southern District of Ohio in Cincinnati. (*See* Doc. 1, Complaint, p. 2). The complaint contains the following allegations:

> Well, it all started on Monday, 6-17-2013 and ended on 6-25-2013! After I filed lawsuit 1:13CV417, experiencing anxiety attack and chest pains (tightening of the chest), I left federal courthouse, downtown and proceed to get on I-71 and go up to Montgomery Road exit, and exit there. Made a right turn and went down to East Galbraith Road and made a left turn on East Galbraith Road and drove up to The Jewish Hospital and pulled in parking lot, parked truck, got out and went into Emergency and told lady at the desk I was experiencing anxiety attack and having chest pains! They call me in five or ten minutes, in which I went to the emergency ward and nurses and doctors starting to ask me questions of what brought me to the hospital! I told them, experiencing anxiety attack and chest pains, while filing lawsuit! The nurse and doctors ask me to take off my outer garments and shoes and socks, and put on hospital robe for examination and running test on my heart! The tall slender RN blonde with pigtail hanging over her left breast was racist, narcissistic, arrogant and made inappropriate statement to me, such as: "You know to[o] Much" and I immediately ask her could I see a "Patient Advocate" and she ignored me! I asked her several times afterward, she ignored me, so I ask another RN (thick, shoulder length hair, we[ar] glasses) on the ER Ward, she said I'll call one for you and no patient advocate show up on 6-17-2013! The blond slender RN came back around 5pm, with a grin on her face, and said the patient advocate[s] were gone for the day! I asked her around 1:30pm, for the first patient advocate.
>
> On 6-19-2013, Wednesday, transportation came for me around 11:30 am, to take me downstairs for surgery procedure (angiogram). I get down there in their holding room, where the patient is recuperating or is getting ready for the operating table. Anyway, the RN, that's in charge of making sure that you're prep and ready for surgery. Her name is Cathy and while she was prepping me for my procedure, "I told her I don't do anesthesia well and it takes me a long time to come back!" Her response[] was, "We don't do anesthesia, we do sedation/sedative." She fail to relay my information to Dr. Dan Tramuta and when I didn't recover in a reasonable time, the doctor thought I had a "STROKE" on the operating table, when in reality, it was the sedative/sedation that they put me under and the breakdown in communication between Cathy and Dr. Tramuta was compromised! Dr. Tra[mu]ta was about to have bowel movement in his pants when I didn't respond to him!

3

> On 6-20-2013, MD Ngozi Nwankwo, she in charge of discharging patients off floor 4 south (cardiology), at the Jewish Hospital on Kenwood and East Galbraith Road. She ask me how I was doing and I reply fine, thank you! Then I ask her would she be around to discharge me, between 8am and 9am on 6-21-2013? She said, "She would and gave me one of her business cards to contact her." So the next day, 6-21-2013, I called the operator (around 7am) to get in touch with her(MD Ngozi Nwankwo), and the operator hook me up with the nurses on 4South and I told them that I was looking for Dr. Nwankwo to be discharge[d] between 8am and 9am. The nurses on 4South tried paging her, but no response. Tried patient advocate, no response, tried Clinical Supervisor, Kim and she tried to 1:30pm, and finally got a hold of Dr. Nwankwo and she came over at 2pm, to write discharge paperwork on me. She made excuses why I, nurses on 4 South and to Kim couldn't get her to response! She said she was in ICU with a very sick patient! I will have to find another hospital to go to! This doctor out right lied to me and her actions showed she is not a person of her word!
>
> On 6-24-2013 and 6-25-2013, I called and talk to Tiffany and another lady, can I speak to Dr. Ahmad, respectively, and he hasn't returned my call[]!
>
> At 3pm, on 6-25-2013, I saw PRIMARY CARE PROVIDER, DR. CHRIS BALKOWEIC, at CINCINNATI VAMC, he was complaining that my A1C is to[o] high and to get my sugars under control! I told him I would and showed him the medical records from the Jewish Hospital and as he was reading them, he start laughing, because what Dr. Tramuta was going thru due to Cathy failure to communicate with him and the fact that the records indicate that I was 6 (SIX) years old, instead of the truth, . . . my age is 60 years old! Before that, I wasn't going to sue the Jewish Hospital, but that's the straw that broke the camel back and pissed me off! That's the reason of this lawsuit, my medical records made me look like a joke in front of Dr. Balkoweic and Dr. Ahmad never got back with me!

(*Id.*, pp. 3-4). As relief, plaintiff requests damages in the amount of "$500,000.00 for the way I was treated in emergency and $100,000,000.00 for being treated on operating table, due to breakdown in communication with doctor and nurse." (*Id.*, p. 5).

In this case, plaintiff's allegations are insufficient to state a claim with an arguable basis in law over which this federal Court has subject matter jurisdiction.

To the extent plaintiff seeks to invoke the diversity jurisdiction of the Court under 28 U.S.C. § 1332(a), the complaint reveals such jurisdiction is lacking. In order for diversity jurisdiction pursuant to § 1332(a) to lie, the citizenship of the plaintiff must be "diverse from the

4

citizenship of each defendant" thereby ensuring "complete diversity." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 (1967)); *see also Napletana v. Hillsdale College*, 385 F.2d 871, 872 (6th Cir. 1967); *Winningham v. North American Res. Corp.*, 809 F. Supp. 546, 551 (S.D. Ohio 1992). In this case, both plaintiff and the named defendants are domiciled in Ohio. Therefore, this Court lacks subject matter jurisdiction on the basis of diversity of citizenship.

District courts also have original federal question jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In order to invoke the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, plaintiff must allege facts showing the cause of action involves an issue of federal law. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). In this case, plaintiff has not cited, nor can the undersigned discern from the facts alleged in the complaint, any federal statutory or constitutional provision that applies to give rise to an actionable claim for relief.

First, plaintiff has alleged no facts giving rise to a cognizable claim for relief against the defendant Clerk of Court. The only allegation that plaintiff has made is that he began to experience an anxiety attack and chest pains while filing a lawsuit at the courthouse. To the extent that the complaint may be liberally construed as alleging that actions taken by clerk's office personnel in the filing of plaintiff's lawsuit caused plaintiff to experience an anxiety attack and chest pains, plaintiff's claim is barred because non-judicial officers "are entitled to a quasi-judicial immunity from claims of damages arising out of their performance of duties closely entwined with the judicial process." *See Gamble v. Whitmer*, No. 3:12CV-P481-H, 2012 WL 4460460, at *2 (W.D. Ky. Sept. 25, 2012) (citing *Bush v. Rauch*, 38 F.3d 842, 847-48 (6th Cir. 1994)) (dismissing civil rights complaint for damages brought against federal judicial employees, including the clerks of court for the Sixth Circuit and a Kentucky district court); *see also McGee*

5

*v. United States*, No. 1:10cv521, 2010 WL 3211037, at *2-3 (S.D. Ohio Aug. 12, 2010) (Weber, J.) (and numerous cases cited therein) (dismissing complaint for damages that was filed against various employees of the Sixth Circuit, including the Clerk of Court and staff attorneys, as well as against employees of a federal district court in Michigan, because quasi-judicial immunity extended to those persons' actions). Plaintiff has alleged no facts suggesting that the clerk's office personnel were acting outside the scope of their duties when receiving plaintiff's pleadings for filing. In any event, most importantly, plaintiff has not alleged any facts even remotely suggesting that the Clerk of Court played any role in the conduct forming the basis for the instant complaint, which pertains to the medical treatment plaintiff received in the emergency and operating wards at the Jewish Hospital.

  Second, plaintiff's allegations are insufficient to give rise to an actionable federal claim against Dr. Ahmad. To state a claim for damages relief under 42 U.S.C. § 1983, plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *See Hines v. Langhenry*, 462 F. A'ppx 500, 503 (6th Cir. 2011) (citing *Boykin v. Van Buren Twp.,* 479 F.3d 444, 451 (6th Cir. 2007); *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)). Similarly, to state a claim for relief under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971), plaintiff must allege that a person acting under color of federal law deprived him of a right secured by the Constitution or laws of the United States. *See Yeager v. General Motors Corp.*, 265 F.3d 389, 398 (6th Cir. 2001) (citing *Bivens*, 403 U.S. at 395-97); *Ruff v. Runyan*, 258 F.3d 498, 502 (6th Cir. 2001) (and cases cited therein). Plaintiff has not stated a viable § 1983 or *Bivens* claim because Dr. Ahmad is a private party, and plaintiff has not alleged any facts indicating that the physician acted jointly with the state or federal government in his role as a member of CHP or as the President and CEO of Mercy Health. *Cf. Barron v. HCA,*

*Inc.*, No. 3:05-1071, 2006 WL 2850634, at *5-6 (M.D. Tenn. Sept. 29, 2006) (holding that the plaintiff had failed to state a federal constitutional claim under § 1983 against private doctors and hospital absent allegations that they "had any involvement with the State").

In any event, plaintiff's only allegation against Dr. Ahmad is that the doctor failed to respond to plaintiff's phone calls on June 24 and 25, 2013 complaining about the treatment plaintiff received while he was at Jewish Hospital. The allegation does not suggest that Dr. Ahmad was negligent or was involved in any way in the alleged misconduct that occurred during plaintiff's stay at the hospital from June 17-21, 2013. Even assuming that plaintiff had alleged that Dr. Ahmad participated in plaintiff's treatment at the hospital, plaintiff's claim sounding in tort of medical malpractice by physicians and nurses at a private hospital does not amount to a federal civil rights claim or an actionable claim under the Federal Tort Claims Act (FTCA), which provides a right of action for the negligence of federal employees or agents, not private parties. *See, e.g., Kennedy v. United States Veterans Admin.,* __ F. App'x __, No. 12-3049, 2013 WL 1693965, at *1 n.1 (6th Cir. Apr. 19, 2013) (noting that one of the defendants, a contract surgeon at a Veterans Administration hospital, had been *sua sponte* dismissed from the civil action in part because "the FTCA is not a mechanism for bringing private claims"); *Owens v. Hutchinson,* 79 F. App'x 159, 161 (6th Cir. 2003) (and Sixth Circuit cases cited therein) ("a medical malpractice claim . . . is a tort actionable in state court, but is not cognizable as a federal constitutional claim"); *cf. Barnes v. Scripps Mercy Hosp.*, No. 3:08-cv-01054-LAB-WMC, 2010 WL 2035542, at *1 (S.D. Cal. May 19, 2010) (holding that the plaintiff's post-judgment "efforts to characterize alleged medical malpractice by private doctors and hospitals as a federal civil rights claim are unavailing").

Moreover, plaintiff's allegations fail to state a federal claim against Dr. Ahmad under the Emergency Medical Treatment and Active Labor Act (EMTALA). The EMTALA provides that

7

all hospitals that participate in Medicare and have an emergency department must (1) "provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists" for any individual who comes to the emergency department and requests treatment; and (2) provide treatment to stabilize any "emergency medical condition" that has been found to exist before discharging or transferring the patient to another facility. *See* 42 U.S.C. § 1395dd(a)-(b); *see also Moses v. Providence Hosp. & Med. Centers, Inc.*, 561 F.3d 573, 579 (6th Cir. 2009); *Barron, supra*, 2006 WL 2850634, at *7. A violation of the federal statute occurs "if a hospital fails to adequately screen a patient, or discharges or transfers a patient without first stabilizing [his or] her medical condition." *Barron, supra*, 2006 WL 2850634, at *7 (citing *Harry v. Merchant*, 291 F.3d 767, 770 (11th Cir. 2002) (en banc)); *see also Moses*, 561 F.3d at 582 (in holding that the EMTALA "requires hospitals to do more for patients with emergency medical conditions than just admit them" to inpatient care or for further testing, the Sixth Circuit emphasized that under § 1395dd(c)(1), the hospital must stabilize the patient's condition before the patient may be discharged or released). In accordance with the statute, "any physician who is responsible for the examination, treatment, or transfer of an individual in a participating hospital, . . . and who negligently violates a requirement of this section, . . . is subject to a civil money penalty." 42 U.S.C. § 1395dd(d)(1)(B).

In this case, plaintiff has not alleged that Dr. Ahmad played any role in his examination, treatment or discharge from the Jewish Hospital, much less acted negligently in that capacity. Therefore, any claim under the EMTALA against Dr. Ahmad is unavailing. In any event, even if plaintiff had stated that Dr. Ahmad was involved in the alleged mistreatment by hospital staff, plaintiff's allegations are insufficient to give rise to the inference that he was denied adequate screening in the emergency room when he sought treatment there on June 17, 2013; that he suffered an "emergency medical condition" which required stabilization at that time; or that the

treatment he received at the hospital prior to his discharge on June 21, 2013 failed to stabilize any emergency medical condition that he may have had. *Cf. Barron, supra*, 2006 WL 2850634, at *7 (holding that the plaintiff had failed to state a claim under the EMTALA in the absence of any allegation that the plaintiff "suffered from an emergency medical condition that required stabilization" or that any "emergency medical condition" was not stabilized upon the plaintiff's admission into the hospital for further treatment). Therefore, the complaint fails to state a viable claim under the EMTALA.

Finally, pendent jurisdiction under 28 U.S.C. § 1367 should not be exercised to consider any state-law claims sounding in tort for medical malpractice that are alleged in the complaint because plaintiff has failed to state a federal claim for relief. *See United States Mine Workers v. Gibbs,* 383 U.S. 715 (1966); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)) ("If the federal claims are all dismissed before trial, the state claims generally should be dismissed as well.").

Accordingly, in sum, the Court concludes that plaintiff's complaint is subject to dismissal as frivolous under 28 U.S.C. § 1915(e)(2)(B) and for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(h)(3).[1] In so ruling, the Court notes that plaintiff has filed two other complaints in the past few weeks, which are pending before the District Court on Reports and Recommendation issued by the undersigned to dismiss the complaint at the screening stage.[2]

---

[1] Where there is no basis for federal jurisdiction apparent on the face of the complaint, a court may dismiss the action as frivolous and for lack of subject matter jurisdiction under 28 U.S.C. § 1915(e)(2)(B) and Fed. R. Civ. P. 12(h)(3). *See Carlock v. Williams*, No. 98-5545, 1999 WL 454880, at *2 (6th Cir. June 22, 1999). However, the dismissal is no bar to refiling the suit in state court.

[2] Plaintiff has filed two complaints with this Court, however, which have been allowed to proceed past the screening stage. *See Bush v. United States, et al.,* Case No. 1:13-cv-76 (S.D. Ohio) (Weber, J.; Litkovitz, M.J.); *Bush v. United States, et al.*, Case No. 1:13-cv-406 (S.D. Ohio) (Barrett, J.; Litkovitz, M.J.). The defendants have filed a motion to dismiss the complaint in Case No. 1:13-cv-76 for lack of jurisdiction and failure to state a claim, which is currently pending before the Court for ruling. *See Bush v. United States, et al.,* Case No. 1:13-cv-76 (S.D. Ohio) (Doc. 9).

*See Bush v. United States, et al.,* Case No. 1:13-cv-384 (S.D. Ohio) (Barrett, J.; Bowman, M.J.) (Doc. 6); *Bush v. United States, et al.*, Case No. 1:13-cv-417 (Dlott, J.; Bowman, M.J.) (Doc. 5). Plaintiff, therefore, is hereby warned that if this and the other two screening dismissal Report and Recommendations are adopted by the District Court, and he continues to file lawsuits with this Court that are subject to dismissal on screening, he may be subject to sanctions under Fed. R. Civ. P. 11 as a vexatious litigator.

## IT IS THEREFORE RECOMMENDED THAT:

1. The complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis. See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIE JAMES BUSH, JR.,
    Plaintiff,

vs

DR. YOUSUF J. AHMAD, et al.,
    Defendants.

Case No. 1:13-cv-448

Beckwith, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

cbc